IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| GERALD CARROLL, et al. | § § § | PLAINTIFFS |
| v. | § § | Civil No. 1:04cv3-HSO-JCG |
| FORT JAMES CORPORATION | § § § | DEFENDANT |

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT FORT JAMES CORPORATION'S MOTION [154] FOR SUMMARY JUDGMENT**

BEFORE THE COURT is Defendant Fort James Corporation's Motion [154] for Summary Judgment. After due consideration of Defendant's Motion [154], the record, and relevant legal authority, the Court finds that the Motion [154] is well taken and should be granted, and that Plaintiffs' remaining claims should be dismissed with prejudice.

I.  BACKGROUND

A.  Factual background

Plaintiffs are a group of individuals who are, or were, property owners in a residential area in Pearl River County, Mississippi, known as "Serenity Lane." They allege that Defendant Fort James Corporation ("Defendant" or "Fort James") and its predecessors contaminated the property before Plaintiffs purchased their homes, and they advance claims against Defendant arising out of this purported contamination. Specifically, Plaintiffs have brought claims for fraud, failure to warn, intentional or negligent infliction of emotional distress, nuisance, trespass,

injunctive relief, strict liability, negligence, unjust enrichment, medical monitoring, and punitive damages arising out of the alleged contamination of their property.

From approximately 1963 to 1984, Defendant's predecessor, Crown Zellerbach, owned the 78-acre tract of land which eventually became Serenity Lane. *See* Compl. [1] at 5 (conventionally filed); Am. Compl. [51] at 1 (conventionally filed) (incorporating allegations from original Complaint).[1]  Plaintiffs claim that Crown Zellerbach began using the site as a dumping ground for toxic or other industrial wastes or by-products and that it allowed the site to be used as a waste dump.  *See* Compl. [1] at 5 (conventionally filed).

According to Plaintiffs, Crown Zellerbach purportedly conspired and arranged for the site to be covered up and hidden from view, and then in 1984 transferred ownership to "Puget Sound," a corporation it had created.  *See id.* at 5-6.  Puget Sound transferred the property to its former employee, Phillip Glassco ("Glassco"), in 1985, with Puget Sound retaining a Deed of Trust.  *Id.* at 6.  Puget Sound and Glassco then created the residential community currently known as "Serenity Lane."  *Id.*

Crown Zellerbach was subsequently transformed or merged into James River Corporation, which created James River II, Inc., and in 1988, Puget Sound transferred ownership of the property to James River II.  *Id.*  After Glassco defaulted and the property was foreclosed upon, James River II obtained complete

---

[1]  Copies of the Complaint [1] and Amended Complaint [51] are available electronically in the Record Excerpts [Doc. 35] filed in the United States Court of Appeals for the Fifth Circuit on April 4, 2006.  *See Carroll v. Fort James Corp.*, R. [35] at 10-24, 533-37, No. 05-60582 (5th Cir. Apr. 4, 2006).

ownership of the site. *Id.* James River II then sold the property to another individual, who ultimately sold individual parcels to Plaintiffs. *Id.* James River II later merged with Fort Howard Corporation, creating Defendant Fort James Corporation. *See id.*

B. Procedural history

The extensive procedural history of this case is set forth in the Court's Memorandum Opinion [67] entered on April 12, 2005, and in the opinion [82] of the United States Court of Appeals for the Fifth Circuit entered on December 20, 2006. The Court adopts and incorporates that procedural history by reference.

After conducting a hearing and considering arguments presented by counsel, on June 20, 2007, the Court issued several bench rulings and then entered a separate Order [124] granting Defendant's Motion [101] to Dismiss or, in the Alternative, to Suspend Plaintiffs' Claims for Failure to Exhaust Administrative Remedies. *See* Order [124] at 1-2. The Court dismissed Plaintiffs' claims for injunctive relief and negligence per se without prejudice for failure to exhaust administrative remedies, and granted Plaintiffs leave to seek to reopen the case once they were able to supply evidence that they had fully exhausted their administrative remedies under Mississippi Code §§ 17-17-1, et seq., and 49-17-31, et seq. *See id.* at 2. Plaintiffs' remaining state-law claims for failure to warn, intentional or negligent infliction of emotional distress, nuisance, trespass, negligence, and punitive damages were stayed. *See id.*

In 2019, Plaintiffs filed a Motion [146] to Lift Stay and Reopen Case, stating

3

that "26 issues pled" in this case were submitted to the Mississippi Department of Environmental Quality ("MDEQ"), and that the Mississippi Commission on Environmental Quality (the "Commission") had ruled that only two of the issues fell within the jurisdiction of the MDEQ. See Mot. [146] at 2-3. Plaintiffs attached the Commission's August 24, 2017, Order [146-1] as an exhibit to their Motion [146].

According to the Commission's Order [146-1], Plaintiffs had requested a hearing to address 24 specific issues. See Comm'n Order [146-1] at 10-12. The Commission found that the following two issues fell within its jurisdiction and were proper for hearing:

1. Does the Serenity Lane property contain sufficient contaminants, the release of which presents an actual or potential threat to human health or the environment, to authorize or require the Mississippi Commission on Environmental Quality to expend funds from the Mississippi Nonhazardous Solid Waste Corrective Action Fund under Section 17-17-63 of the Mississippi Code, as amended?
2. Has Fort James Corporation violated the Solid Waste [sic] Disposal Law i.e. Sections 17-17-1 through 17-17-47 of the Mississippi Code, by disposing of solid waste on the Serenity Lane property?

Id. at 14-15; see also id. at 57-58. The Commission dismissed the remaining issues raised by Plaintiffs for lack of jurisdiction. See id. at 15, 58.

After a two-day evidentiary hearing, the Commission addressed the first issue within its jurisdiction and determined that Plaintiffs "did not meet their burden of substantial evidence and, thus are not eligible for CATF funding," and denied Plaintiffs' request for funding. See id. at 63. With respect to the second

4

issue, the Commission "conclude[d] and order[ed] that there is not substantial evidence indicating that Fort James violated the Solid Wastes Disposal Law of 1974 (Miss. Code Ann. §§ 17-17-1 through 17-17-47) by disposing of solid wastes on the Serenity Lane Property." *Id.* at 64.  The Commission ordered that "no further assessment and remedial action is necessary or warranted at the Serenity Lane site," *id.* at 65, and made clear that its Order was "a final Order of the Commission appealable according to Miss. Code Ann. § 49-17-41 (Rev. 2012)," *id.*

Plaintiffs apparently appealed the Commission's Order to the Chancery Court of Pearl River County, Mississippi.  *See* Def.'s Br. [146-4] at 1-7.  Fort James moved to dismiss the appeal, but on August 6, 2018, Plaintiffs filed their own motion to voluntarily dismiss the appeal, and the chancery court dismissed the appeal without prejudice on August 14, 2018.  *See* State Ct. Order [146-3] at 1.

Plaintiffs then filed a Motion [146] to Lift Stay and Reopen Case in this case, arguing that they had administratively exhausted their claims and asking the Court to allow them "to return to Federal Court to litigate the 26 causes of actions [sic] and issues that could not be tried before the MDEQ, as the MDEQ had no jurisdiction to hear the Federal pled issues."  Pl.'s Mot. [146] at 7.

On March 3, 2020, the Court entered an Order [153] granting in part and denying in part Plaintiffs' Motion [146].  Finding that Plaintiffs had still not fully exhausted their administrative remedies with respect to their claims for injunctive relief and negligence per se, the Court denied Motion [146] to the extent it sought to lift the stay and reopen the case as to those claims.  Order [153] at 6-7.  The Court

noted that these two claims were previously dismissed for Plaintiffs' failure to exhaust administrative remedies, and that they should remain dismissed. *Id.* at 6 (citing Order [124] at 1-2). The Court granted Plaintiffs' Motion [146] to the extent it sought to lift the stay and reopen the case as to Plaintiffs' state-law claims for failure to warn, intentional or negligent infliction of emotional distress, nuisance, trespass, negligence, and punitive damages, and those claims are now currently before the Court.

Defendant has filed a Motion [154] for Summary Judgment seeking dismissal of all of Plaintiffs' remaining state-law tort claims. *See* Mot. [154]; Mem. [155]. Defendant argues that all of the remaining claims are based upon the allegation that the property was used for disposal of solid or hazardous wastes and is contaminated, but that Plaintiffs have not and cannot come forward with any evidence to show any contamination of this property with hazardous wastes. *See* Mem. [155] at 20-26.[2] Defendant points out that there is no evidence that there are or ever were hazardous substances on the property, or that any alleged contamination occurred while Defendant's predecessors owned the property, or that Plaintiffs have been exposed to hazardous substances attributable to Defendant. *See id.* Defendant also contends that Plaintiff's claims are barred by collateral estoppel, citing the Commission's Order, *see id.* at 26-28, and are further precluded because Plaintiffs failed to fully exhaust their administrative remedies, *see id.* at 28-29.

---

[2] When citing Defendant's Memorandum [155], the Court refers to the ECF-generated page numbers.

6

Despite affording Plaintiffs additional time, until January 4, 2021, to file a Response to Defendant's Motion [154], *see* Order [165] at 5, Plaintiffs have not done so. Nor have they requested additional time to file a Response.

## II. DISCUSSION

A.  Relevant legal authority

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Jones v. New Orleans Reg'l Physician Hosp. Org., Inc.*, 981 F.3d 428, 432 (5th Cir. 2020) (quotation omitted); *see* Fed. R. Civ. P. 56(a). Generally the party who moves for summary judgment bears the initial burden to show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law, a burden which can be satisfied by showing that a reasonable jury could not find for the nonmovant. *Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 329 (5th Cir. 2020). A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Jones*, 981 F.3d at 432.

"For a defendant, this means showing that the record cannot support a win for the plaintiff—either because the plaintiff has a failure of proof on an essential element of its claim or because the defendant has insurmountable proof on its affirmative defense to that claim." *Joseph*, 981 F.3d at 329. A defendant can make this showing by introducing undisputed evidence or by pointing out the

7

absence of evidence to support a plaintiff's case.  *Id*.  If a defendant makes this initial showing, then the burden shifts to the plaintiff "to demonstrate that there is a genuine issue of material fact and that the evidence favoring the plaintiff permits a jury verdict in the plaintiff's favor."  *Id*.  The plaintiff "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  In considering a motion for summary judgment, the court views all facts and evidence in the light most favorable to the nonmovant.  *See Jones*, 981 F.3d at 432.

B.  <u>Analysis</u>

An essential element of each of Plaintiffs' remaining state-law claims, for failure to warn, intentional or negligent infliction of emotional distress, nuisance, trespass, negligence, and punitive damages, is that Defendant or its predecessors dumped or failed to warn of unspecified toxic and other hazardous wastes on the property.  *See* Compl. [1] at 9-14 (conventionally filed); Am. Compl. [51] at 1 (conventionally filed) (incorporating allegations from original Complaint).  Defendant seeks summary judgment on all of these claims, and Plaintiffs have failed to respond to Defendant's Motion [154] or to adduce any evidence in response.  While the Court cannot grant a potentially dispositive Motion [154] as unopposed, it notes that Defendant has presented factual contentions and evidence in support of its Motion [154] that are unrebutted, including that the property was not contaminated with hazardous substances and that Plaintiffs were not injured by Defendant.  *See, e.g.,* Aff. of Richard Ball [154-3] at ¶¶ 1, 5-7; MDEQ Order [154-2]

at 57-65.

Plaintiffs have not presented any evidence that contradicts Defendant's position or that would demonstrate that any toxic or other hazardous wastes were ever present on their property, or even if they were, that Defendant or its predecessors were responsible for any such contamination. *But see, e.g.,* Aff. of Richard Ball [154-3] at ¶¶ 1, 5-7; MDEQ Order [154-2] at 57-65. Nor have Plaintiffs presented any evidence that they have been exposed to hazardous substances attributable to Defendant or its predecessors. *But see, e.g.,* Aff. of Richard Ball [154-3] at ¶¶ 1, 5-7; MDEQ Order [154-2] at 57-65. The lack of evidence on these points is fatal to all of Plaintiffs' remaining state-law claims, as argued by Defendant in its Memorandum [155] in support of its request for summary judgment. *See* Mem. [155] at 20-26.

For example, "in order to establish a claim for common law trespass or nuisance, the plaintiffs must present sufficient evidence not only that their properties were exposed to chemicals but also that those chemicals came from the [defendant]." *Anglado v. Leaf River Forest Prod., Inc.*, 716 So. 2d 543, 544 (Miss. 1998). Plaintiffs have made no such showing here, and Defendant has presented competent summary judgment evidence to negate this element of Plaintiffs' claims, including evidence of soil and water-well sampling results. *See, e.g.,* Aff. of Richard Ball [154-3] at ¶¶ 1, 5-7 (averring that, while employed as an environmental scientist at MDEQ, he sampled a public drinking water well located in the Serenity Lane Subdivision and found no contaminants above safe-drinking water standards,

9

and that he collected soil samples on behalf of MDEQ, which did not indicate any contamination above MDEQ's "action limits" for the various areas sampled); MDEQ Order [154-2] at 57-65 (finding no scientific evidence to support the petitioners' claims that there were actual or potential threats to human health or the environment, and concluding that the petitioners had not demonstrated that the property contained sufficient contaminants, the release of which present an actual or potential threat to human health or the environment, and that there was "not substantial evidence indicating Fort James violated the Solid Wastes Disposal Law of 1974 (Miss. Code Ann. §§ 17-17-1 through 17-17-47) by disposing of solid wastes on the Serenity Lane property").

As for Plaintiffs' alleged intentional or negligent infliction of emotional distress claims, the Mississippi Supreme Court "has never allowed or affirmed a claim of emotional distress based on a fear of contracting a disease or illness in the future, however reasonable." *Leaf River Forest Prod., Inc. v. Ferguson*, 662 So. 2d 648, 658 (Miss. 1995). If a plaintiff seeks to recover for emotional distress predicated on potential future illness, "there must be substantial proof of exposure and medical evidence that would indicate possible future illness." *Id.*; *see also Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 395-96 (5th Cir. 2009).[3] Based on the summary judgment record, Plaintiffs have not pointed to any such evidence

---

[3] In *Paz*, the Fifth Circuit observed that "Mississippi law does 'not recognize a cause of action for fear of possibly contracting a disease at some point in the future.'" *Paz*, 555 F.3d at 395 (quoting *Brewton v. Reichhold Chems., Inc.*, 707 So. 2d 618, 620 (Miss. 1998)). "Where a party fails to proffer substantial proof of exposure and medical evidence that indicates the plaintiffs may contract any disease at any point in time in the future, summary judgment is appropriate." *Id.* at 396 (quotation omitted).

10

of either in this case.

In sum, Defendant has pointed out the absence of evidence to support each of Plaintiffs' remaining claims, and it has presented undisputed evidence that neither Defendant nor its predecessors disposed of any waste on Plaintiffs' properties. The burden therefore shifted to Plaintiffs to demonstrate that there exists a genuine issue of material fact and that the evidence favoring them would permit a jury verdict in their favor. *See Joseph*, 981 F.3d at 329. Plaintiffs have not done so as to any of their remaining state-law tort claims, and it is not the Court's function "to scour the record in search of evidence to defeat a motion for summary judgment." *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 997 (5th Cir. 2019) (quotation omitted). Defendant's Motion for Summary Judgment should be granted for the reasons stated here, as well as for the reasons argued in Defendant's Memorandum [155], and Plaintiff's remaining state-law tort claims should be dismissed with prejudice.

### III.  CONCLUSION

To the extent the Court has not addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Fort James Corporation's Motion [154] for Summary Judgment is **GRANTED**, and Plaintiffs' remaining state-law tort claims for failure to warn, intentional or

11

negligent infliction of emotional distress, nuisance, trespass, negligence, and punitive damages are **DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED**, this the 14th day of January, 2021.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE